**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF LABOR, *et al.*,<br><br>        Defendants. | Case No. 1:19-cv-3574 (APM) |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

**INTRODUCTION**

For decades Presidents have issued a series of executive orders regarding equal opportunity for employees and prospective employees of government contractors. These executive orders— including Executive Order 11246 (EO 11246)—require federal contractors to comply with heightened equal-opportunity standards in their employment practices. In particular, contractors that meet a certain dollar threshold must agree not to discriminate on the basis of race, color, religion, sex, sexual orientation, gender identity, or national origin. And, as set forth in EO 11246, the Office of Federal Contract Compliance Programs (OFCCP) in the Department of Labor (Labor) enforces these requirements, pursuant to implementing regulations promulgated by the Secretary of Labor (Secretary). 41 C.F.R. chapter 60. The enforcement procedures outlined in EO 11246 and detailed in the Secretary's implementing regulations guarantee contractors the right to be heard before an administrative tribunal and to receive a final administrative order from Labor. Contractors may seek review of the agency's final actions in Article III courts.

Plaintiff, Oracle America, Inc. (Oracle), is a government contractor. As such, Oracle has accepted the heightened equal employment opportunity requirements of EO 11246 as a condition

of its contracts with the government, just like every other covered government contractor since 1965.  Indeed, each government contract that Oracle has entered into includes, or incorporates by reference, the equal-opportunity clause that EO 11246 requires.  *See* 48 C.F.R. § 52.222-26 (Federal Acquisition Regulation 52.222-26).

Oracle is currently the subject of ongoing enforcement proceedings brought by OFCCP based on allegations that Oracle discriminated against female, Asian, and African American employees in compensation.  Oracle may honor its contracts and submit to OFCCP's administrative proceedings—including the ability to obtain a final administrative order from Labor that is subject to judicial review—or remove itself from OFCCP's jurisdiction by giving up its covered federal contracts.  But Oracle instead is pursuing a third option.  Through this lawsuit, Oracle is attempting to keep the benefits of its bargained-for government contracts while challenging the equal-opportunity requirements that accompany them.

This Court need not reach the merits of Oracle's claims, however, because the company's claims are not justiciable.  The time to bring a *facial* challenge to OFCCP's enforcement scheme or regulations—which Oracle identifies as dating back to 1977—has long since passed.  And any as-applied challenges are premature, since administrative proceedings against Oracle are ongoing and thus there is no final agency action to challenge.  Oracle's complaint must be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

OFCCP administers and enforces three laws regarding equal-employment opportunity for applicants and employees of federal contractors and subcontractors.  This lawsuit concerns OFCCP's enforcement of EO 11246, which President Lyndon B. Johnson issued in 1965.[1]

---

[1] Although not at issue in this case, OFCCP also enforces the Vietnam Era Veterans' Readjustment Assistance Act of 1974 and section 503 of the Rehabilitation Act of 1973.

I.    **EO 11246 Imposes Nondiscrimination and Equal Opportunity Requirements on Federal Contractors and Subcontractors.**

EO 11246, which makes compliance with certain nondiscrimination and equal-opportunity requirements a condition of acting as a federal contractor or subcontractor, built on a history of similar executive orders in this area.  As the United States prepared for World War II, President Franklin Delano Roosevelt issued EO 8802, "reaffirm[ing] the policy of the United States that there shall be no discrimination in the employment of workers in defense industries or government because of race, creed, color, or national origin," requiring a nondiscrimination clause in all defense contracts, and providing for enforcement of those requirements.  EO 8802, 6 Fed. Reg. 3109 (June 27, 1941).  Subsequent Presidents—including Presidents Truman, Eisenhower, and Kennedy—issued their own executive orders along these lines, including by expanding nondiscrimination requirements beyond defense contractors to apply to most government contractors, as well as updating applicable enforcement procedures.  EO 10308, 16 Fed. Reg. 12303 (Dec. 6, 1951); EO 10479, 18 Fed. Reg. 4899 (Aug. 18, 1953); EO 10925, 26 Fed. Reg. 1977 (Mar. 8, 1961); *cf. Uniroyal, Inc. v. Marshall*, 482 F. Supp. 364, 374-75 (D.D.C. 1979) (noting that "[a] number of Presidents of the United States, beginning with Franklin D. Roosevelt . . . have made it a primary national objective that the government shall not buy from those engaged in systematic racial or other improper discrimination" and noting the "significance and import" of that public interest).

EO 11246, issued by President Johnson in 1965 and amended by subsequent Presidents, forbids federal government contractors and subcontractors whose contracts meet certain dollar thresholds from engaging in discriminatory employment practices.  Specifically, Part II of EO 11246 bars employment discrimination based on race, color, religion, sex, sexual orientation,

gender identity, or national origin by federal contractors.[2]  EO 11246 § 202, as amended.  The order delegates responsibility for administering and enforcing the requirements of Part II to the Secretary.  EO 11246 § 201; *see also* EO 11246 § 205 ("The Secretary of Labor shall be responsible for securing compliance by all Government contractors and subcontractors with this Order and any implementing rules or regulations.").  And it authorizes the Secretary to "adopt such rules and regulations and issue such orders as are deemed necessary and appropriate to achieve the purposes of Part[ ] II . . . of this Order."  EO 11246 § 201.  The Secretary, in turn, has delegated the authority to promulgate these regulations to the Director of OFCCP.  *See* Secretary's Order 7-2009; 74 Fed. Reg. 58,834 (Nov. 13, 2009); *see also* EO 11246 § 401 ("The Secretary of Labor may delegate to any officer, agency, or employee in the Executive branch of the Government, any function or duty of the Secretary under Parts II . . . of this Order.").

EO 11246 empowers the Secretary to "hold such hearings, public or private, as the Secretary may deem advisable for compliance, enforcement, or educational purposes," including hearings "prior to imposing, ordering, or recommending the imposition of penalties and sanctions under this Order."  EO 11246 § 208.  EO 11246 also grants the Secretary authority to impose sanctions and penalties for violating the Order, including by "direct[ing] the contracting agency to cancel, terminate, [or] suspend . . . any contract" after consulting with the contracting agency and by "[p]roviding that any contracting agency shall refrain from entering into further contracts, or extensions or other modifications of existing contracts, with any noncomplying contractor, until such contractor has satisfied the Secretary of Labor [of the contractor's compliance]."  EO 11246 § 209.  Furthermore, every contractor covered by EO 11246 agrees that if it fails to comply with

---

[2] EO 11246 also includes specific provisions for federally assisted construction contracts and other provisions not relevant to this case.  *See, e.g.*, EO 11246 §§ 301-04.

the contract's nondiscrimination clauses or with the Secretary's rules, regulations, or orders, "sanctions may be imposed and remedies invoked as provided in [EO 11246] or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law." EO 11246 § 202(7).

Under the Executive Order, federal contractors and subcontractors must comply not only with the Executive Order itself but also with the Secretary's "rules, regulations, and relevant orders." EO 11246 § 202(5). The regulations, in turn, prescribe procedures for "[a]dministrative enforcement proceedings [to] be conducted under the control and supervision of the Solicitor of Labor." 41 C.F.R. § 60-1.26(b)(2); *see also id*. part 60-30 (setting forth Rules of Practice for such hearings). These regulations also identify potential sanctions for violations of a federal contractor's nondiscrimination obligations, *id*. § 60-1.27, as well as remedies for the victims of any discrimination, *id.* § 60-1.26(a)(2).

When OFCCP has reasonable cause to believe that a contractor has violated EO 11246 or its implementing regulations, it may issue a notice to show cause why monitoring, enforcement proceedings, or other actions to ensure compliance should not be instituted. *Id.* § 60-1.28. If reasonable efforts at conciliation fail, *id.* § 60-1.26(b)(1), OFCCP may begin enforcement proceedings by filing a complaint with Labor's Office of Administrative Law Judges. *Id.* § 60-1.26(b)(2). An Administrative Law Judge (ALJ) then oversees administrative enforcement proceedings, which may include discovery, motions practice, and a hearing. *Id.* §§ 60-30.5 to 60-30.24. At the conclusion of these proceedings, the ALJ issues recommended findings, conclusions, and a decision. *Id*. § 60-30.27. Those recommendations and the record are certified to the Administrative Review Board (ARB) for a final administrative order. *Id.*

The parties may submit exceptions to the ALJ's recommended findings, conclusions, and decision to the ARB. *Id*. § 60-30.28. The regulations provide that, after the time for filing

exceptions has expired, the ARB makes a final decision on the basis of the record. *Id.* § 60-30.29. A final order must issue within one year of the ALJ's recommendations or the filing of exceptions and responses, whichever is later. *Id.* § 60-1.26(b)(2). The ARB's decision is the final administrative order, *id.* § 60-30.29, unless the Secretary exercises his or her discretion to review the ARB's decision, in which case the Secretary's decision becomes the final administrative order.[3] The agency's final administrative order is then subject to review under the APA in federal district court. *See, e.g.*, *Bank of Am. v. Solis*, No. 09-2009 (EGS), 2014 WL 4661287 (D.D.C. July 2, 2014) (APA challenge to ARB's final decision and order finding violation of EO 11246).

## II.    An Administrative Tribunal Is Currently Considering Oracle's Alleged Discriminatory Employment Practices.

In recent years, Oracle has entered into more than $100 million per year of contracts with the federal government. 2d Am. Admin. Compl. ¶ 4, *OFCCP v. Oracle*, 2017-OFC-6 (Mar. 8, 2019), https://www.oalj.dol.gov/PUBLIC/FOIA/Frequently_Requested_Records/Oracle_2017_OFC_00006/Oracle_2017OFC00006_DOC_001.pdf. As such, Oracle agreed to the nondiscrimination and equal-opportunity requirements of EO 11246. *See* 48 C.F.R. § 52.222-26.

In 2014, OFCCP initiated a compliance review of Oracle's headquarters in Redwood Shores, California, for compliance with EO 11246's requirements. Having found and notified Oracle of violations, which were not resolved through conciliation, OFCCP filed a complaint with Labor's Office of Administrative Law Judges in January 2017, as well as a second amended

---

[3] The Secretary recently issued an order reserving the discretionary authority to review ARB decisions. Secretary's Order 01-2020, 85 Fed. Reg. 13,186 (March 6, 2020). Accordingly, the Department issued an NPRM to implement that order, proposing corresponding changes to 41 C.F.R. §§ 60-30.29 and 30.30, and an accompanying direct final rule. Discretionary Review by the Secretary, Notice of Proposed Rulemaking, 85 Fed. Reg. 13,086, 13,104 (March 6, 2020); Discretionary Review by the Secretary, Direct Final Rule, 85 Fed. Reg. 13,024, 13,041 (March 6, 2020).

complaint in March of 2019, both pursuant to EO 11246 and its implementing regulations.  2d Am. Admin. Compl. ¶ 10.  Among other claims, OFCCP alleged that Oracle discriminated against female, Asian, and African American employees in certain job functions by paying them less than comparable male or white employees in similar roles.  2d Am. Admin. Compl. ¶¶ 12-32.  The second amended complaint raised allegations of violations that date back to 2013.  2d Am. Admin. Compl. ¶¶ 12, 36.  OFCCP sought injunctive relief barring Oracle from violating EO 11246; cancellation of Oracle's federal contracts and subcontracts; debarment of Oracle from holding federal contracts and subcontracts until Oracle remedies the past noncompliance and shows that it is in compliance; and "complete relief to the affected classes, including lost compensation, interest, and all other benefits of employment resulting from Oracle's discrimination."  Prayer for Relief, 2d Am. Compl. pp. 16-17.

OFCCP's administrative complaint against Oracle is pending before ALJ Richard M. Clark in San Francisco, California.  After resolving cross-motions for summary judgment from the parties, ALJ's Order Denying Cross Motions for Summary Judgment and Granting in Part Defendant's Alternative Motion for Partial Summary Judgment (Admin. Order on SJ) at 59, *OFCCP v. Oracle*, 2017-OFC-6 (Nov. 25, 2019), https://www.oalj.dol.gov/DECISIONS/ALJ/ OFC/2017/OFCCP_v_ORACLE_AMERICA_INC_2017OFC00006_(NOV_25_2019)_153838_ ORDER_PD.PDF, ALJ Clark presided over a hearing addressing the remaining claims in December 2019.  Post-hearing briefing remains pending.

Oracle filed its complaint in this lawsuit on November 27, 2019.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff seeking to invoke the jurisdiction of a federal court bears the burden of establishing that the court has jurisdiction to hear

his or her claims.  *See U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  In reviewing a motion to dismiss for lack of subject-matter jurisdiction, the Court may, where necessary, consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

When a complaint fails "to state a claim upon which relief can be granted," then dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss under Rule 12(b)(6) should be granted if a plaintiff fails to plead enough facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

The Court should dismiss Oracle's claims for lack of jurisdiction and for failure to state a claim upon which relief can be granted.  Oracle attempts to bring a facial challenge to OFCCP's administrative procedures.  But a facial challenge is time-barred because OFCCP's procedures have existed for decades.  Furthermore, even if Oracle's complaint could be read as bringing as-applied challenges, those claims should nevertheless be dismissed for several reasons:  Oracle does not challenge a final agency action and Oracle lacks standing to bring a challenge to aspects of OFCCP's procedures that have no bearing on OFCCP's proceedings against Oracle.  Accordingly, Oracle's claims should be dismissed.

## I.     Facial Challenges to OFCCP's Decades-Old Administrative Procedures Are Time-Barred.

Oracle's complaint appears to be a facial challenge to OFCCP's enforcement regime.  "The usual distinction between 'as-applied' and 'facial' challenges is that the former ask only that the reviewing court declare the challenged statute or regulation unconstitutional on the facts of the

particular case; the latter, in contrast, request that the court go beyond the facts before it to consider whether, given all of the challenged provision's potential applications, the legislation creates such a risk of curtailing protected conduct as to be constitutionally unacceptable 'on its face.'" *Sanjour v. EPA*, 56 F.3d 85, 92 (D.C. Cir. 1995).  Here, Oracle's complaint is rife with sweeping assertions that OFCCP's entire administrative-enforcement apparatus is unlawful, rather than complaining about the specifics of Oracle's encounter with OFCCP.  *See, e.g.*, Compl. ¶ 141 ("This enforcement regime vastly exceeds the authority conferred upon the President by the Procurement Act, Title VII, or any other possible source of statutory support."); Compl. at 47, Prayer for Relief (requesting that the court "[d]eclare that the OFCCP's regime violates the Constitution and the APA and conflicts with Title VII, the applicable six-year statutes of limitations, and Executive Order 11,246").

But there is a fatal flaw in Oracle's attempt to launch such a facial challenge.  According to Oracle, the enforcement procedures it is challenging here date to 1977.[4]  Because the APA does not set a specific statutory deadline, the six-year statute of limitations of 28 U.S.C. § 2401 applies to claims brought under the APA.  *See* 28 U.S.C. § 2401 ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *see also James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1093-94 (D.C. Cir. 1996) (the APA "carries a six-year statute of limitations"); *P & V Enterprises v. U.S. Army Corps of Engineers*, 466 F. Supp. 2d 134, 142 (D.D.C. 2006) ("[T]he Court must conclude that, in enacting § 2401(a), Congress intended 'the words "every civil action" [to] mean what they

---

[4] *See, e.g.*, Compl. ¶ 4 ("Starting in 1977 and continuing through today . . . ."); ¶ 20 ("But in 1977 . . . the OFCCP promulgated new regulations . . . initiating a sweeping regulatory enforcement regime . . . ."); ¶¶ 31-42 (describing "OFCCP's 1977 Power Grab").  Though not directly relevant, OFCCP has in fact used the challenged procedures before 1977.

say,' and to encompass substantive facial challenges to agency regulations no less than any other type of challenge." (quoting *Spannaus v. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987))), *aff'd*, 516 F.3d 1021 (D.C. Cir. 2008).  According to Oracle's stated timeline, that six-year limitations period would have expired in 1983—more than 30 years ago.  As a result, the time for facial challenges to OFCCP's administrative enforcement procedures is long past.  *See Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004) (dismissing challenge to agency's approval of state's environmental review process as time-barred by the six-year statute of limitations of § 2401(a)).

There is a narrow exception to the APA's six-year statute of limitations.  Under the "reopener doctrine" in this circuit, when an agency subsequently reconsiders and recommits itself to the challenged position, the clock is reset and the six-year time period starts anew.  *See CTIA-Wireless Ass'n v. FCC*, 466 F.3d 105, 110 (D.C. Cir. 2006) (holding that reopener "arise[s] . . . where an agency conducts a rulemaking or adopts a policy on an issue at one time, and then in a later rulemaking restates the policy or otherwise addresses the issue again without altering the original decision" (quoting *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998) (alterations in *CTIA-Wireless*))).  But this doctrine applies only when "the later proceeding explicitly or implicitly shows that the agency actually reconsidered the rule."  *Id.* (quoting *Nat'l Ass'n of Reversionary Prop. Owners*, 158 F.3d at 141).

Reopener is inapplicable here because Labor has not, within the last six years, reconsidered any of the features of its administrative system that are at issue here (such as back-pay awards). Indeed, Oracle does not allege otherwise.  At most, its complaint vaguely asserts that "in each subsequent rulemaking, including some in the last six years, the OFCCP has stuck with its expansive enforcement regime."  Compl. ¶ 50.  But such vague assertions do not warrant applying

the reopener doctrine.  Reopener requires more than an agency "sticking" with its policy; instead, the doctrine applies only when the agency has actually evaluated a policy anew and decided to retain it.  As the D.C. Circuit explained, a court considering reopener

> must look to the entire context of the rulemaking including all relevant proposals and reactions of the agency to determine whether an issue was in fact reopened.  If in proposing a rule the agency uses language that can reasonably be read as an invitation to comment on portions the agency does not explicitly propose to change, or if in responding to comments the agency uses language that shows that it did in fact reconsider an issue, a renewed challenge to the underlying rule or policy will be allowed.

*Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 150 (D.C. Cir. 1990).

While OFCCP has "stuck" with its position, it has not reconsidered any of the administrative procedures for enforcing EO 11246 at issue here.  Indeed, the only three final rules published by OFCCP in the last six years—and Labor's more recent proposal regarding Secretarial review of ARB decisions—deal with separate and unrelated topics not at issue here.[5]  Oracle's facial challenge is therefore time-barred.

## II.    To the Extent Oracle Intends to Bring an As-Applied Challenge, Those Claims Would Be Barred for Threshold Reasons.

Even if Oracle's claims were construed as as-applied challenges, they would still fail for threshold reasons.  To be sure, an entity may bring an as-applied challenge within six years of when an agency policy is applied to the entity.  *See NextWave Pers. Commc'ns, Inc. v. FCC*, 254

---

[5] *See* Discrimination on the Basis of Sex, 81 Fed. Reg. 39,108 (June 15, 2016) (updating the Sex Discrimination Guidelines in OFCCP regulations); Government Contractors, Prohibitions Against Pay Secrecy Policies and Actions, 80 Fed. Reg. 54,934 (Sept. 11, 2015) (implementing EO 13665 by adding prohibitions on discrimination against employees or applicants who discuss compensation to OFCCP regulations); Implementation of Executive Order 13672 Prohibiting Discrimination Based on Sexual Orientation and Gender Identity by Contractors and Subcontractors, 79 Fed. Reg. 72,985 (Dec. 9, 2014) (implementing EO 13672 by adding sexual orientation and gender identity to OFCCP regulations); Discretionary Review by the Secretary, Notice of Proposed Rulemaking, 85 Fed. Reg. 13,086, 13,104 (March 6, 2020).

F.3d 130, 141 (D.C. Cir. 2001) ("[A] party against whom a rule is applied may, at the time of application, pursue substantive objections to the rule[,] even where the petitioner had notice and opportunity to bring a direct challenge within statutory time limits but failed to do so." (internal quotation marks omitted)).  The six-year limitation, however, is not the timing problem that Oracle faces for any as-applied challenge.  Instead, it faces a different problem:  OFCCP's administrative procedures before ALJ Clark have not yet concluded, and thus there is no final agency action for this Court's review.  And at a minimum, Oracle should not be permitted to press any claims that OFCCP does not adhere to a six-year statute of limitations at the administrative level, because OFCCP is not pursuing any claims that would violate that rule against Oracle.

### A. Oracle's Claims Must Be Dismissed Because Oracle Does Not Challenge a Final Agency Action.

Review of Oracle's as-applied challenge is premature because the administrative proceeding against Oracle has not yet resulted in a final agency action.  Judicial review under the APA is limited to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  "Agency actions are final if two independent conditions are met: (1) the action 'mark[s] the consummation of the agency's decisionmaking process' and is not 'of a merely tentative or interlocutory nature;' and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997))).

Many APA cases involve challenges to agency regulations, and in those cases the promulgation of the regulation generally serves as the final agency action for review.  But here, as noted above, a facial challenge to the applicable regulations is time-barred.  If Oracle instead wishes to pursue an as-applied challenge, it must first identify a final agency action within the last six years.  The active stages of enforcement by OFCCP, including the filing of an administrative

complaint and the ongoing administrative proceedings, do not suffice.   The agency's decisionmaking process has not yet concluded and no legal rights or obligations have been determined.   *See USAA Fed. Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1508 (D.C. Cir. 1988) ("[T]he mere issuance of an administrative complaint does not constitute final agency action." (citing *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980))).

The Supreme Court has held that pre-enforcement review of agency action may be appropriate where the agency's action has "a specific, concrete effect on the party's primary conduct . . . an effect going beyond forced participation in the enforcement proceeding itself." *USAA*, 849 F.2d at 1509 (citing *Abbott Labs*, 387 U.S. at 152-53)).   For example, in *Abbott Labs*, the plaintiff pharmaceutical firms were required "either to change all labels and promotional materials for various generic drugs or refuse to abide by the new regulations and risk serious criminal and civil penalties for noncompliance."   *USAA*, 849 F.2d at 1509 (citing *Abbott Labs*, 387 U.S. at 152-53).   It is insufficient if a plaintiff can "point only to the unpleasantness and burden of defending itself in an administrative proceeding that the [plaintiff] earnestly believe[s] was utterly ill-founded."   *USAA*, 849 F.2d at 1509.   Here, Oracle, unlike plaintiffs in *Abbott Labs*, is not being required to change its primary conduct, only to continue defending itself before OFCCP's administrative proceeding.   It must therefore await a final agency action to bring this suit in federal court.

Particularly instructive is the Fifth Circuit analysis of the final-agency-action requirement in the context of OFCCP enforcement in *American Airlines, Inc. v. Herman*, 176 F.3d 283 (5th Cir. 1999).   American Airlines brought a collateral suit in district court while OFCCP was pursuing administrative proceedings against it for alleged violations of the Rehabilitation Act.   *Id.* at 284-86.   Because those proceedings were still ongoing, and the agency "ha[d] not yet made a final

determination," the court concluded that there was no final agency action.  *Id*. at 289.  As was the case in *American Airlines*, here, "[f]urther proceedings are required before the DOL can issue an order which has conclusive legal consequences.  The pending administrative proceedings which [plaintiff] seeks to have courts short-circuit will determine [plaintiff's] ultimate rights and obligations, and, may avert judicial review altogether."  *Id*. at 292.  In other words, the scope of an appropriate as-applied action by Oracle will be determined by eventual final agency action.  If Labor does not impose back pay, injunctive relief, or the other specific remedies or penalties to which Oracle objects, then there will be no need for judicial review of the agency's ability to seek those remedies or penalties.

### B.  Oracle Lacks Standing to Challenge OFCCP's Lack of a Statute of Limitations.

Finally, Oracle objects to OFCCP's enforcement proceedings because "OFCCP does not adhere to a six-year statute of limitations in its disputes with contractors."  Compl. ¶ 107.  Oracle suggests that OFCCP should be required to follow the six-year statute of limitations provided in the Contract Disputes Act for government claims against contractors.  Compl. ¶ 105.

It is unclear why Oracle raises this objection in its complaint:  In the enforcement proceeding against Oracle, OFCCP brought claims relating only to Oracle's conduct within Oracle's proposed six-year statute of limitations.  *See* 2d Am. Admin. Compl. ¶¶ 12-13, 35-36, *OFCCP v. Oracle*, 2017-OFC-6 (Mar. 8, 2019) (asserting that Oracle violated applicable nondiscrimination requirements in the years 2013 to 2016).  Oracle cannot demonstrate an injury in fact and therefore lacks standing to challenge any other hypothetical enforcement proceedings against other entities regarding violations more than six years in the past.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (Article III standing requires plaintiff to have "suffered an injury in fact . . . which is (a) concrete and particularized, and (b) actual or imminent, not

14

conjectural or hypothetical[.]").  Because standing reflects separation-of-powers concerns, the inquiry is "especially rigorous" where, as here, a plaintiff asks a federal court "to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).  There is no "action taken" by OFCCP regarding any conduct by Oracle that is more than six years old, and Oracle alleges no harm caused to it by any policies OFCCP may apply in enforcement against other entities.  And any speculative contention that OFCCP might reach too far back in a *future* enforcement action against Oracle is too attenuated to support standing, and a "generalized grievance," such as "every citizen's interest in proper application of the Constitution and laws," is insufficient.  *Lujan*, 504 U.S. at 573, 575 (citation omitted).

## CONCLUSION

For the previously stated reasons, this Court should grant Defendants' motion to dismiss.


Dated:  March 27, 2020                    Respectfully submitted,

                                          JOSEPH H. HUNT
                                          Assistant Attorney General

                                          BRAD P. ROSENBERG
                                          Assistant Branch Director

                                          */s/ Rebecca M. Kopplin*
                                          REBECCA M. KOPPLIN
                                          Trial Attorney (California Bar No. 313970)
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L St. NW
                                          Washington, DC 20005
                                          Tel:  (202) 514-3953
                                          Fax:  (202) 616-8470
                                          E-mail:  rebecca.m.kopplin@usdoj.gov

                                          *Counsel for Defendants*