# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>              Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF LABOR; U.S.<br>OFFICE OF FEDERAL CONTRACT<br>COMPLIANCE PROGRAMS; EUGENE<br>SCALIA, Secretary of the U.S. Department<br>of Labor; CRAIG E. LEEN, in his official<br>capacity as Director of the U.S. Office of<br>Federal Contract Compliance Programs<br><br>              Defendants. | Case No. 19-cv-3574 (APM)<br><br>[ORAL ARGUMENT REQUESTED] |

## PLAINTIFF'S SUR-REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... ii

TABLE OF ABBREVIATIONS .................................................................................... iv

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 2

    I.     The Procurement Act Does Not Authorize OFCCP's Adjudication
         Regime. ......................................................................................................... 2

    II.    Inherent Executive Power Does Not Authorize OFCCP's Adjudication
         Regime. ......................................................................................................... 7

    III.   EO 11,246 Does Not Authorize Agency-Provided Injunctive Or
         Monetary Relief. .......................................................................................... 9

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES[1]

Page(s)

**Cases**

*AFL-CIO v. Kahn*,
  618 F.2d 784 (D.C. Cir. 1979) ................................................................8

*Bldg. & Constr. Trades Dep't v. Allbaugh*,
  295 F.3d 28 (D.C. Cir. 2002) ...............................................................7, 8

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979) ............................................................................10

*Council for Urological Interests v. Burwell*,
  790 F.3d 212 (D.C. Cir. 2015) ................................................................7

*Crowell v. Benson*,
  285 U.S. 22 (1932) ...............................................................................5

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  452 F.3d 798 (D.C. Cir. 2006) ................................................................3

*\*Perkins v. Lukens Steel Co.*,
  310 U.S. 113 (1940) ...........................................................................1, 8

*UAW-Labor Emp't & Training Corp. v. Chao*,
  325 F.3d 360 (D.C. Cir. 2003) ................................................................6

*Uniroyal, Inc. v. Marshall*,
  482 F. Supp. 364 (D.D.C. 1979) .............................................................8

*Vietnam Veterans of Am. v. Sec'y of the Navy*,
  843 F.2d 528 (D.C. Cir. 1988) ................................................................3

**Statutes**

40 U.S.C. § 101 ......................................................................................2

\*40 U.S.C. § 121 .............................................................................2, 3, 4, 5

40 U.S.C. § 122 ......................................................................................6

40 U.S.C. § 486(a) ..................................................................................3

63 Stat. 389, § 205(a) (1949) ...............................................................2, 3, 4

---

[1] Authorities principally relied upon are marked with an asterisk (*).

**Executive Orders**

Executive Order No. 11,246 ................................................................................................ *passim*

## TABLE OF ABBREVIATIONS

APA                Administrative Procedure Act

CDA                Contract Disputes Act of 1978

DOJ                Department of Justice

EEOC               Equal Employment Opportunity Commission

EO                 Executive Order

GSA                General Services Administration

OFCCP              Office of Federal Contract Compliance Programs

Procurement Act    Federal Property and Administrative Services Act of 1949

# INTRODUCTION

Defendants' reply is a giant tell that they realize OFCCP's adjudication regime is not authorized.  Starting on page one, they defend aspects of the regime that Oracle does not challenge.  They focus on the regime's "heightened nondiscrimination requirements [for] federal contractors" (i.e., affirmative-action obligations).  ECF No. 43, Defs. Reply 1.  And they claim the regime is "modest[]" because it is just "the executive branch's method of determining which contractors to contract with."  *Id.* at 1, 11 n.4.  But Oracle isn't challenging OFCCP's affirmative-action requirements or that the government can choose who it contracts with.  Oracle challenges one thing:  OFCCP's self-created regime of agency adjudication and remediation of employment-discrimination claims.  Far from merely "fill[ing] the necessary role of providing equitable proceedings to resolve [such] disputes," *id.* at 1, that regime has resulted in a massive expansion of OFCCP's power, allowing it to require the in-house adjudication of claims for hundreds of millions of dollars in damages as well as disruptive, burdensome injunctions.

Defendants consistently dodge the dispositive issue: whether the Procurement Act authorizes OFCCP's agency adjudication and remediation regime.  They instead fixate on whether EO 11,246, in general, is authorized by the Act.  But whether the Act's "policies and directives" provision may authorize executive orders of *some* kind or may authorize *some* aspects of EO 11,246 is beside the point.  The Act must confer authority on the executive to establish OFCCP's adjudication regime, and Defendants repeatedly fail to explain how it does.

Perhaps recognizing the absence of Procurement Act authority, Defendants continue their belated litigation assertion that the President has inherent procurement power.  They ignore the Supreme Court case (that they first cited, *Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940)), which demonstrates that procurement power begins with Congress.  They also ignore that

procurement power is not the power to mandate agency adjudication, which is Congress's alone. Ultimately, nothing Defendants say on inherent authority or EO 11,246 can carry the day.

**ARGUMENT**

**I.      The Procurement Act Does Not Authorize OFCCP's Adjudication Regime.**

Oracle provided various independent reasons that the Procurement Act does not authorize OFCCP's agency-adjudication regime.  Before diving into the details, however, it is worth pausing on Defendants' basic defense: that OFCCP's regime of adjudication and remediation of employment-discrimination claims is justified under the Act's provision entitled "Purpose," 40 U.S.C. § 101, because EO 11,246 generally facilitates an "economical and efficient system" of procurement, *id*.  *See* Defs. Reply 2-6.  That contention must fail.  No amount of argument about nexus with economy and efficiency can conjure the authority Defendants wish, because § 101, like any other statement-of-purpose provision, does not authorize any and all conceivable action advancing a statute's goals.  ECF No. 40, Oracle Opp. 19-20; ECF No. 23, Oracle Br. 17-21 & n.7, 42.  Rather, that provision *limits* what can be done pursuant to the Act's *substantive* provisions.  Oracle Opp. 19-20.  The sole substantive provision Defendants identify—the "policies and directives" provision, 40 U.S.C. § 121(a)—does not allow for OFCCP's adjudication regime, so any purported advancement of economy or efficiency is irrelevant.

**A.** The "policies and directives" provision does not confer the power to promulgate binding rules (here, forcing private parties to submit to agency adjudication).  Oracle Opp. 3-12; Oracle Br. 15-17.  Instead, the provision envisions only the President directing how his subordinates fulfill their functions under the Act.  Defendants do not show otherwise.

The provision's meaning—explicit in its original formulation and unchanged since—is that presidential "policies and directives *shall govern the [GSA] Administrator and executive agencies in carrying out their respective functions hereunder*."  63 Stat. 389, § 205(a) (1949)

(emphasis added), *previously codified at* 40 U.S.C. § 486(a); *see also* Defs. Reply 3.  That is the power to "govern" how subordinates "carry[] out" their Act-assigned functions, 63 Stat. 389, § 205(a); it is not independent power to bind private parties, who neither are subordinates nor have "respective functions" under the Act, *id.  See* Oracle Opp. 3-5; Oracle Br. 15-16 & n.5. That reading is also supported by the administrative-law meaning of "policies" and Congress's typical language conferring the power to bind private parties.  In administrative law, "policies" are guidance regarding how the executive branch will act, not rules that bind private parties. Oracle Opp. 5 & n.2; Oracle Br. 16.  Moreover, Congress has consistently shown that, when it conveys authority to craft rules binding private parties, it invokes the ability to pass "regulations" (or "rules").  Oracle Opp. 6 & n.3.  Indeed, Congress used that language—"prescribe regulations"—in the Act to grant rulemaking authority to someone other than the President.  40 U.S.C. § 121(c)(1).

Against all this, Defendants assert, without any supporting authority, that the "policies and directives" language is "sufficient to indicate [Congress]'s intent" to authorize legislative rulemaking.  Defs. Reply 7.  They do not say why Congress departed from its typical language in granting rulemaking.  And their sole response to the well-understood administrative-law meaning of the term "policies" is to argue that the term in the Procurement Act is not the "specific phrase" used by the APA ("general statement of policy").  Defs. Reply 6.  But courts have not required that exact phrase when concluding that policies do not bind private parties.[1]

Defendants' primary response—that "rulemakings are a common method of implementing 'policies'" and "an executive order … [is] a 'directive'"—does what Defendants

---

[1] *See, e.g.*, *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 537 (D.C. Cir. 1988) ("A binding *policy* is an oxymoron." (emphasis added)); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 808-09 (D.C. Cir. 2006) ("policy guidelines" non-binding, in part because "[t]hey [were] labeled 'policy guidelines,' not rules").

accuse Oracle of doing: "fixat[ing] on the words 'policies and directives'" while ignoring the provision's full language.  Defs. Reply 6.  Defendants disregard that the statute requires that the "policies and directives" guide subordinates within the executive branch in "carry[ing] out" their "respective functions" under the Act; they do not govern private parties who have no "respective functions" to "carry out."  63 Stat. 389, § 205(a).  Even if one assumes that *some* rulemakings or executive orders fit the "policies and directives" label when they direct only executive-branch actors on matters of management or procedure, the statutory phrase here does not embrace presidential legislative rulemaking that binds private parties.  Oracle Opp. 5-6.  That basic point defeats Defendants' suggestion that Oracle's reading "render[s]" the provision "a nullity."  Defs. Reply 7.  The President is authorized to act, but he may only manage his subordinates.[2]

Statutory context hammers home that the Procurement Act approves of the President controlling only his subordinates.  After all, that is the clear upshot of Act's explicit conferral of rulemaking authority on the GSA Administrator.  In the very same provision that the Act grants the President the authority to "prescribe policies and directives" to his subordinates, the Act authorizes the Administrator to "prescribe regulations" and precludes her from delegating that authority to anyone else.  40 U.S.C. § 121(c)(1), (d)(2)(A).  Congress's deliberate choices here are meaningful.  So says every applicable canon, such as *expressio unius* (Congress could have said that "the President and the GSA Administrator may prescribe regulations," but said only the latter can) and the rule against surplusage (if the President has rulemaking authority and can

---

[2] Defendants suggest that this is all OFCCP's regime does—that it merely "explains the executive branch's requirements for contractors and how the executive branch will determine whether those requirements are met."  Defs. Reply 8; *see id.* at 5.  That might be true if OFCCP's regulations bound *only* executive-branch officials (e.g., by forbidding them from entering a contract that allowed a contractor to discriminate).  But Defendants ignore that OFCCP's regulations purport to bind private parties too—the regulations force participation in OFCCP's in-house adjudications.  That requires legislative rulemaking authority that OFCCP does not have (either directly under the Act or indirectly via the President under the Act).

delegate it to whomever he pleases, it would be superfluous to specifically provide rulemaking authority to one of his subordinates and forbid her from delegating it).  Oracle Opp. 6, 9-10; Oracle Br. 15-16.  Defendants respond that there would be no direct "conflict[]" if the President and Administrator both have rulemaking authority.  Defs. Reply 9.  But they adduce no affirmative reason to think that the power is shared.  That is because there is none.[3]

    **B.**  Even if the Procurement Act permitted the President to promulgate legislative rules, OFCCP's regime would still be unauthorized.  Contrary to the requirement that Congress must explicitly provide for agency adjudication, the Act is silent as to OFCCP's adjudication regime.  Oracle Opp. 12-21; Oracle Br. 10-14, 17-21.  Defendants fail to dig themselves out from the mountain of authority showing that agency adjudication is Congress's choice and thus requires Congress's express endorsement.  Oracle Opp. 13-17, 34-36; Oracle Br. 11-12 & n.3.

    Instead, Defendants continue to play a shell game with EO 11,246.  Defs. Reply 10-12.  Defendants have already conceded that the Procurement Act does not "directly refer to OFCCP's regulations" and that "OFCCP is not relying upon a specific statutory provision to authorize a regulation directly."  ECF No. 37-1, Defs. Br. 22, 25-26.  Thus, they are left to claim that the lack of congressional contemplation of agency adjudication is acceptable because "the relevant authorization flows to OFCCP from EO 11246."  Defs. Reply 10.  But Defendants cannot cut Congress out of the equation—relying on an executive order without congressional approval of agency adjudication contradicts longstanding Supreme Court precedent holding that "the mode of determining matters" that "aris[e] between the government and others, which from their nature do not require judicial determination," "is *completely* within *congressional* control."  *Crowell v.*

---

[3] Defendants also fail to respond to how the presidential "policies and directives" language mirrors the Act's provision that agency heads can issue "orders and directives," 40 U.S.C. § 121(c)(2)—undisputedly *not* authority to issue legislative rules.  Oracle Opp. 10-11.

*Benson*, 285 U.S. 22, 50 (1932) (emphases added; quotation marks omitted); *see* Oracle Opp. 16 & n.5, 34-35.  Defendants do not address that point.  Although they premise their argument on "the fact that a duly authorized executive order can occupy a place analogous to a statute," Defs. Reply 10, they never explain how, given the above precedent, the specific aspect of EO 11,246 at issue—agency adjudication—is in fact "duly authorized."  Nor do they muster any authority holding that (1) EO 11,246 "duly authorizes" OFCCP's agency-adjudication regime or (2) an executive order can "duly authorize" agency adjudication without Congress's approval.[4]

**C.**  Defendants also fail to overcome a host of additional obstacles foreclosing the Procurement Act from supplying the necessary authority.  Defendants betray their argument's weakness by relying on the long-disfavored interpretative method of implicit ratification that would not obtain even if it were legitimate.  Oracle Opp. 25-28; Oracle Br. 32-35.  Indeed, it would be particularly unnatural to imply authorization for OFCCP's adjudication regime given its serious departures from the adjudication parameters Congress expressly established in Title VII and the CDA.  Oracle Opp. 21-25; Oracle Br. 23-32.  And stretching the Act to authorize OFCCP's adjudication regime would violate the nondelegation doctrine—yet another reason counseling against such an extreme reading of the Act.  Oracle Opp. 29-33; Oracle Br. 35-40.

---

[4] All Defendants say is that the executive order "in [*UAW-Labor Emp't & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003)] … instructs the Secretary of Labor to adopt implementing regulations and authorizes the Secretary to provide for hearings to determine contractor compliance."  Defs. Reply 5.  But they do not contend that *UAW* made a holding on either front.  For good reason:  As Oracle explained, *UAW* does not address whether the President can promulgate legislative rules.  Oracle Opp. 8.  Nor does *UAW* approve of agency hearings.

Additionally, Defendants give short shrift to the Procurement Act's provision authorizing agency adjudication of sex-discrimination disputes in federal-assistance programs, 40 U.S.C. § 122.  They say this provision "would be an eccentric method for Congress to choose to end OFCCP's adjudications."  Defs. Reply 10.  But Oracle does not contend that the provision addresses OFCCP's regime.  Rather, the provision shows that, when Congress authorizes agency adjudication, it does so expressly.  Oracle Opp. 14-15; Oracle Br. 33.

**II.     Inherent Executive Power Does Not Authorize OFCCP's Adjudication Regime.**

     **A.**  Under *Chenery*, this Court cannot consider inherent contractual power because OFCCP has never in rulemaking invoked that authority as a basis for its regime.  Oracle Opp. 11-12, 33.  Defendants admit that OFCCP has only "cited EO 11246 as the source of its authority" and that inherent contractual power is "an alternate source of authority."  Defs. Reply 15-16.  Yet they suggest that citing only EO 11,246 "does not preclude the existence of an alternate source of authority for the regulations," and so "OFCCP was [not] required to specifically mention the President's inherent authority when rulemaking."  *Id.* at 15-16. Defendants cite nothing for this point, blowing past the principle that courts "cannot consider [an] argument" regarding an agency's authority that the agency never "articulate[d] … during … rulemaking."  *Council for Urological Interests v. Burwell*, 790 F.3d 212, 223 (D.C. Cir. 2015); *see* Oracle Opp. 11-12, 33.  The agency's generic reference to EO 11,246 in rulemaking cannot be a placeholder allowing the agency to fill in any "source of authority for the regulations[] or for EO 11246," Defs. Reply 16, that the agency later devises and develops in litigation.

     **B.**  Defendants' inherent-authority theory also fails on the merits.  Oracle Opp. 34-43. Defendants have not demonstrated inherent executive authority in procurement, let alone inherent authority to bind contractors to an agency adjudication and remediation regime.  *Id.* at 36-40.  Rather, the authority to establish agency adjudication resides exclusively with Congress. *Id.* at 34-36.  The President establishing such a regime on his own here is thus exactly like those other "situations" Oracle referenced where the "President … trench[ed] on areas consigned to other branches," Defs. Reply 16.

     Defendants suggest otherwise by contending that this situation is "very different," because the President can "exercise administrative control 'throughout the Executive Branch, of which he is the head.'"  *Id.* (quoting *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28, 32

(D.C. Cir. 2002)).  But authority to control the executive branch accords with the President's take-care power; it does not amount to authority to bind private parties to administrative adjudication that Congress has not authorized.  Oracle Opp. 38-40; *see supra* 5-6.

Indeed, Defendants have cited no case establishing that the President has inherent contracting power.  Defendants originally relied on *Perkins v. Lukens Steel Co.* for the proposition that "the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases."  310 U.S. at 127; *see* Defs. Br. 15.  But Oracle showed that Defendants misread *Perkins*, which (1) speaks of "the Government" as the executive and legislature together and (2) in context, shows that Congress, not the executive, has "unrestricted power" in procurement, including with respect to authorizing administrative adjudication.  Oracle Opp. 38; *see Perkins*, 310 U.S. at 128-29; *accord Allbaugh*, 295 F.3d at 32.[5]

Defendants do not attempt to rehabilitate *Perkins* in their reply.  In fact, they do not even mention it.  They do, however, silently reincorporate their misreading by citing *Uniroyal, Inc. v. Marshall*, 482 F. Supp. 364 (D.D.C. 1979), for the proposition that "the authority of [EO 11,246] is furthered strengthened by the principle … that [the government's] authority with respect to contractors is extensive and that it may set the terms upon which those wishing to deal with it must operate."  *Id.* at 370; *see* Defs. Reply 16.  *Uniroyal* invoked *Perkins* for that misconception, misinterpreting the decision the way Defendants did in their motion.  482 F. Supp at 370.

Also unavailing is Defendants' contention that, even if it is not "clearly authorized by

_____

[5] This is confirmed by the Procurement Act itself:  If the President inherently possessed all procurement-related authorities, there would have been no need for Congress to pass the Act.  It is thus no surprise that, in *AFL-CIO v. Kahn*, "the D.C. Circuit did not endorse," Defs. Reply 18, the principle that the "President [can] act[] within his 'implied authority'" in government contracting if the Act "d[oes] not apply."  618 F.2d 784, 791 n.40 (D.C. Cir. 1979) (en banc).

inherent executive authority, [OFCCP's regime] would still fall within the 'zone of twilight' where Congress and the President have 'concurrent authority.'"  Defs. Reply 17 (citation omitted).  Congress and the President do not have "concurrent authority" over establishing agency adjudication:  Agency adjudication is Congress's choice alone.  Oracle Opp. 16-17, 34-36, 41.  And even if there were concurrent authority, Congress has not invited the executive to tread there, because Congress has not left an open field or shown indifference over adjudication and remediation of employment-discrimination claims or government-contract claims.  *Id.* at 21-28, 41; *see* Oracle Br. 23-35.[6]

### III.    EO 11,246 Does Not Authorize Agency-Provided Injunctive Or Monetary Relief.

At a minimum, EO 11,246 explicitly enumerates the relief available, which does not encompass—or resemble—injunctive or monetary relief.  Oracle Opp. 43; Oracle Br. 40-42.

**A.**  Defendants rely on EO 11,246's preamble and a general notion that an agency can "craft remedies necessary to effectuate its enforcement authority."  Defs. Reply 20.  But various authorities show that fidelity to the text and fundamental constraints on agency power do not allow the Secretary to reach beyond what EO 11,246 expressly provides.  Oracle Opp. 43-44; Oracle Br. 10, 17-19, 42.  Defendants' argue that none of this applies when an executive order is being interpreted, Defs. Reply 20, but they offer no legal authority for that assertion.  Defendants also offer no limiting principle on an agency's authority to craft its own remedies.[7]

**B.**  Defendants also suggest that the Equal Opportunity Clause in government contracts

---

[6] Defendants (correctly) do not contend they can validate invalid regulations through contractual incorporation.  *See* Oracle Opp. 41-43.  So the regulations here must fall as unauthorized.

[7] Indeed, Defendants suggest that the agency's remedial authority is unfettered—claiming that make-whole relief is justified because OFCCP can already "debar[] federal contractors altogether" and companies can "avoid" sanctions by "voluntary debarment."  Defs. Reply 18-19.  That reasoning, which permits the government to threaten a party with an unauthorized sanction so long as the party can avoid it with an authorized one, would permit nearly any relief.

allows the Secretary to provide for effectively any relief whatsoever, because § 202(7) states that "other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965 *or by rule regulation, or order of the Secretary of Labor*, or as otherwise provided by law."  *See* Defs. Reply 19.  Oracle explained that this provision instead contemplates two things.  First, relief not referenced in § 202(7) itself—namely, referral to DOJ or EEOC provided for elsewhere in EO 11,246 and remedies that the President or Congress might authorize after September 24, 1965.  Oracle Opp. 44-45.  Second, "rules, regulations, or orders of the Secretary of Labor" as provided by § 209 regarding the relief explicitly enumerated by the Executive Order.  *See* Oracle Opp.  45.

Defendants respond that Oracle's interpretation "does violence to the text" by ignoring the Secretary's role.  Defs. Reply 19.  Not at all.  Defendants simply disregard Oracle's second point regarding regulations for relief explicitly enumerated by the Executive Order.  As for Oracle's first point, it respects the text too—and separation of powers.  Defendants suggest that § 202(7)'s reference to the Secretary allows him acting alone to furnish freestanding relief.  *Id.* But § 202(7) stipulates that any relief must be "provided by law."  And a rule, regulation, or order of the Secretary has the "force and effect of law" only if it is authorized by Congress. Oracle Opp. 5 (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979)); Oracle Br. 9.  That is why future relief contemplated in § 202(7)'s reference to relief "as provided [by] … the Secretary of Labor" must be "en route from Congress or the President," Defs. Reply 19—the Secretary must be authorized to act (by Congress or by the President authorized by Congress). Defendants' contrary interpretation knows no bounds.

## CONCLUSION

This Court should grant Oracle's and deny Defendants' motion for summary judgment.

Dated: September 22, 2020                    Respectfully submitted,

                                             /s/ Andrew D. Silverman
                                             Andrew D. Silverman (D.C. Bar No. 1013835)
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             51 West 52nd Street
                                             New York, NY 10019-6142
                                             Telephone:    +1 212 506 5000
                                             Facsimile:    +1 212 506 5151
                                             asilverman@orrick.com

                                             Robbie Manhas (D.C. Bar No. 1029976)
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             Columbia Center
                                             1152 15th Street, N.W.
                                             Washington, DC 20005-1706
                                             Telephone:    +1 202 339 8400
                                             Facsimile:    +1 202 339 8500
                                             rmanhas@orrick.com

                                             *Counsel for Plaintiff*